PENNINGTON *et al.* v. STANTON, *Appellant.*

### Division One, December 22, 1894.

**Conveyance**: DEED FOR SUPPORT: MENTAL CAPACITY OF GRANTOR. In an action by the heirs of a deceased grantor to set aside a deed of a farm made in consideration of an agreement for her support, the evidence showed that she was an aged widow, and, though palsied and physically helpless, took care of her property and attended to her business affairs and executed the conveyance in question, with full knowledge of its contents, and that defendant faithfully performed his part of the agreement, which was the consideration for such deed. *Held,* that a finding of the trial court that the grantor was mentally incapable of executing the conveyance was erroneous.

*Appeal from Andrew Circuit Court.*—HON. W. S. HERNDON, Judge.

REVERSED AND REMANDED.

*Booher & Williams* for appellant.

(1) This was not a gift but a sale. Stanton paid full value for this land. The trial court does not find that any undue influence was exercised. *Taylor v. Crockett*, 27 S. W. Rep. 620. (2) The deed being just in itself and its consequences, it will not be avoided on the ground of undue influence. *Moore v. Moore*, 67 Mo. 192; *Turner v. Turner*, 44 Mo. 535; *Hamilton v. Armstrong*, 27 S. W. Rep. 1054. (3) No fraud, mistake, deception or undue influence was exercised by Stanton or anyone else. Mrs. Goff had no children and no relatives who had done anything for her or contributed to the acquirement of the property or were dependent upon her or her bounty, and these facts should be considered in determining the questions involved. *Hamil-*

*ton v. Armstrong*, 27 S. W. Rep. 1054. (4) The supreme court is not bound by either the findings of fact or conclusions of law of the trial court in equity cases. *Thompson v. Cohen*, 24 S. W. Rep. 1023; *Likins v. Likins*, 27 S. W. Rep. 531. (5) The burden in this case is on the plaintiffs. There were no confidential relations. *Kimball v. Cuddy*, 7 N. E. Rep. 589; *Cornell v. Cornell*, 75 N. Y. 91; *Taylor v. Crockett*, 27 S. W. Rep. 620. (6) There was no undue influence in this case. *Kimball v. Cuddy*, 7 N. E. Rep. 589; *Will of Carroll*, 7 N. W. Rep. 434; 2 Pomeroy's Equity Jurisprudence, sec. 951; *Likins v. Likins*, 27 S. W. Rep. 531; *Bowles v. Nathan*, 54 Mo. 261; *Hollocher v. Hollocher*, 62 Mo. 267; *Cornell v. Cornell*, 75 N. Y. 91; *Allen v. Drake*, 109 Mo. 627. (7) This case does not come within the rule laid down by this court in cases of *Hall v. Knappenberger*, 97 Mo. 510 and *Gay v. Gillilan*, 92 Mo. 250. *Maddox v. Maddox*, 114 Mo. 35; *Cornell v. Cornell*, 75 N. Y. 91. (8) The burden of proving mental incapacity and undue influence rests on the plaintiff. *Taylor v. Wilburn*, 20 Mo. 306; *Rankin v. Rankin*, 61 Mo. 295; *Myers v. Hauger*, 98 Mo. 433; *Thompson v. Ish*, 99 Mo. 161; Jarman on Wills [1 Am. Ed.] p. 133; *Webster v. Sullivan*, 12 N. W. Rep. 319; *Shepardson v. Potter*, 18 N. W. Rep. 575; Abbott's Trial Evidence, p. 119; Schouler on Wills, sec. 239; *Priest v. Way*, 87 Mo. 16; *Maddox v. Maddox*, 114 Mo. 35. (9) The exercise of undue influence must be such as to destroy the will power and overreach and destroy the free agency of testator or grantor. *Thompson v. Ish*, 99 Mo. 161; *Rankin v. Rankin*, 61 Mo. 295; *Jackson v. Hardin*, 83 Mo. 195; Jarman on Wills [1 Am. Ed.] p. 133; *Shepardson v. Potter*, 18 N. W. Rep. 575; Schouler on Wills, secs. 227, 229, 239; *Mooney v. Olsen*, 22 Kan. 79; *Norton v. Paxton*, 110 Mo. 456; *Cutler v. Zollinger*, 117 Mo. 92; *Kimball v. Cuddy*, 7 N. E.

Rep. 589. (10) The relations existing between Mrs. Goff and Stanton were not "confidential." *Cornell v. Cornell*, 75 N. Y. 91; *Earle v. Chance*, 12 R. I. 374; *Maddox v. Maddox*, 114 Mo. 35. (11) Mrs. Goff was perfectly competent to make the deed in question. *Cutler v. Zollinger*, 117 Mo. 92; *Benoist v. Murrin*, 58 Mo. 307; *Norton v. Paxton*, 110 Mo. 456.

*David Rea, W. P. Hall* and *Vinton Pike* for respondents.

(1) If this case is not controlled by *Hall v. Knappenberger*, 97 Mo. 511, the doctrine of that case can not be considered longer in force. The facts in *Hall v. Knappenberger*, are more fully reported in the opinion on the first hearing published in 6 Southwestern Reporter, 381, by which it will appear that the case was a stronger one for the donee than this. (2) The defendant agreed to take care of Mrs. Goff and her stock for the use of the farm. This arrangement governed the parties for two years. No reason for a change was suggested. Her statement to Fee, when the deed was signed, indicated that no claim of defendant for past services was in her mind; yet it is inserted in the deed which defendant had drawn. It is evident the defendant apprehended the future care and support would not be deemed adequate consideration for the conveyance, in view of the probable duration of Mrs. Goff's life. The insertion of a false consideration is a badge of fraud. 2 Pomeroy's Equity Jurisprudence [1 Ed.], sec. 928, note 2, p. 433; May on Fraudulent Conveyances, [2 Ed.] 496. (3) Mrs. Goff was completely "under the thumb" of defendant. The transaction was kept a secret. Mrs. Goff was not furnished with independent advice, an essential condition in cases of this character. (4) The evidence is not clear or satis-

factory that the deed was explained to Mrs. Goff at its execution. Reading the deed was not sufficient to inform her of its nature and effect. *Kelly v. Settegast*, 2 S. W. Rep. 873; *Corrigan v. Pironi*, 23 Atl. Rep. 356.

BRACE, J.—The plaintiffs are a sister and brother, and two of the heirs at law of Mrs. Polly Goff, who died in Andrew county in August or September, 1892. On the first day of March, 1889, by warranty deed, duly executed, acknowledged and delivered, and on the next day filed for record in the office of the recorder of deeds for said county, Mrs. Goff, party of the first part, conveyed her farm in said county, containing about ninety-one acres, to the defendant, William Stanton, party of the second part, for the following consideration and agreement expressed in said deed, to wit: "In consideration of the sum of $1 and the care, board, clothing and maintenance of said first party for the past two years and for the remainder of her natural life, which said second party agrees to furnish and provide. * * * It is agreed by the acceptance of this deed the said second party acknowledges full satisfaction for all claims for support to date, and agrees and contracts to support, clothe, maintain and care for said first party and provide her with medical attendance in sickness during the balance of her natural life."

Some time after the death of Mrs. Goff the plaintiffs instituted this suit in the circuit court of said county, by petition in the nature of a bill in equity, to set aside said deed on the ground of undue influence, exercised by the defendant over the mind of the grantor, and her mental incapacity to make said deed, and, having obtained a decree canceling the deed, the defendant appeals.

It appears from the evidence that at the time the deed was made and executed Mrs. Goff was about

seventy-two years old, and illiterate. She had been a widow about seven years. She had been an invalid from her youth. She seems, from the description of the witnesses, to have been afflicted with shaking palsy. She could not walk without assistance, and, in the main, had to be carried from place to place. She talked with difficulty, slowly and in a stammering manner. Her control over her limbs, tongue and bowels was imperfect, and she required the constant attention and assistance of someone in peforming nearly all the physical functions of life. She seems never to have received such attention from any relation of her own blood. She inherited some property from her father, which, notwithstanding her infirmities, she always managed and controlled, and when she executed the deed, besides the little farm in question, had a few head of stock and some $400 or $500 in money and notes. The defendant, who was a neighbor and a young married man, with his wife and one child went to live with, and take care of, her on her farm about the first of March, 1887. All the evidence is to the effect that from that time until the day of her death he devoted himself almost exclusively to her service, assiduously providing for her wants and rendering her every service necessary to her comfort with uniform kindness and consideration. That the defendant faithfully performed his agreement, which was the consideration of the deed, is uncontroverted. That the services which he obligated himself to perform, and did perform, were adequate consideration for the deed, is testified to by all the witnesses who testified on that subject, whether for the plaintiff or defendant, and they were many. That she executed the deed with full knowledge of its contents, clearly appears from the evidence, while there was no evidence tending to prove that the defendant used any improper means to procure its execution.

Upon this state of the proof, while the court could not, and did not, find that the deed was procured by undue influence, it did, however, find that at the time of the execution thereof "said Polly Goff was not mentally capable of making a disposition of her property, or of intelligently executing a deed," and decreed its cancellation.

To support the allegations of the petition, the plaintiffs introduced five witnesses, all of whom, including John Patton, one of the plaintiffs, testified as to her mental capacity. Mr. Brown, who had known her from her youth up, said that he never thought her really capable of doing business, and, upon being immediately asked what was the matter with her, proceeded to describe her physical condition. While the witness had known Mrs. Goff and her family for a long time, he seems to have known very little of her, at least after she arrived at maturity, never having had any business transactions with her or been in any way brought into intimate relations with her, and his opinion of her mental condition was evidently a deduction from his knowledge of her physical condition.

Her brother, John Patton, plaintiff, after testifying that her condition about the time she executed the deed was the same as it had been always, testified that "Her mental condition was tolerably good generally. * * * Most generally she understood what she was doing. * * Knew those about her and was of very independent disposition. * * * Pretty good wit." And that she kept her property and looked after it as well as the balance of the family.

Mr. Kuntz, who lived with her three or four years before the defendant went to live with her, and who continually had business transactions with her during that time, all of which she seems to have conducted

prudently and rationally, knew her condition intimately. When asked what was her mental condition he said: "I ain't able to say. Sometimes she seemed to be all right. She was kind, old and childish is all I could say;" and, while testifying that she could be influenced to do a favor by kindness, it also appears from his testimony that she knew her property and her rights; that her mind was pretty strong and she always took care of her money and property, and according to his own account of her transactions with him, got the advantage of him in the wind up between them.

Mrs. George Davis, a step daughter of Mrs. Goff, after testifying to her physical condition, was asked what was her condition mentally, and answered, "Well, I don't know. I never heard her talk very much. I don't know very much how she would be." Upon being again asked a like question, she answered, "Well, I don't hardly know. I never had much dealings with her. I don't know much about that. When you would ask her a question she would answer it correct." And to questions then immediately asked her, as to whether she was able to transact her own business, answered: "I don't think she was, * * * and never was since I knew her." It is doubtful whether this witness intended to be understood as saying her stepmother was incapable of attending to her business by reason of mental incapacity. She probably attributed her incapacity to attend to business rather to her physical than her mental condition. Whatever her meaning may have been, the force of this testimony is weakened by the fact that witness did not get along well with her stepmother, her feelings for the defendant were unfriendly, and that she was impeached as to this evidence by another witness to whom she had declared that her stepmother "was as sharp as a tack."

Plaintiffs' fifth witness was Stephen Fee, the notary who took her acknowledgment to the deed, who testified "that he read the deed over to her, or explained its contents to her, and that she seemed to understand it; that he asked her: "Grandmother, do you know what you are making this deed for?" and she answered, "I have no one; I have to have a place to live at, and Mr. Stanton is going to take care of me, and if he takes care of me while I live then he is to have this land;" that she signed the deed by making her mark; that he took the acknowledgment, and that, from his observation, he was of the opinion that she understood the nature of the contract. This was in substance the plaintiff's case on the issue of *non compos mentis*.

For the defendant, thirteen witnesses were examined on this issue. They were all neighbors and friends of Mrs. Goff, who had known her for years and had business and social relations with her. Some had bought property from her and others had borrowed money from her. Others only knew her socially as country neighbors do. They had been brought into actual mental contact with her in one way or another, and, speaking with such knowledge as they thereby gained of her mental condition, they all say with one accord, however different the terms they use in expressing the idea, that she was a woman of sound mind, capable of taking care of and managing her own property, and of disposing of the same rationally and prudently, notwithstanding her physical infirmities. All the evidence tended to prove that she had always done so, and the disposition in this instance forms no exception to her rule of doing the best she could for herself.

The preponderance of the evidence on all the issues was strongly in favor of the defendant, and the finding should have been in his favor. The judgment is reversed. All concur.