The State ex rel. Jefferson Stone, Guardian, etc., Respondent, v. The Grand Lodge Ancient Order of United Workmen of Missouri, Appellant.

Kansas City Court of Appeals, February 6, 1899.

1. **United Workmen**: BY-LAWS: CONSTRUCTION: SUSPENSION. The by-laws of the United Workmen as to suspension of members are reviewed and relator's ward held to have been properly suspended for the reasons:

   (1) That at the time of his suspension he was not a "beneficiary member" being capable of following "his usual business or other occupation";

   (2) That he was delinquent on his lodge dues for more than three months which disqualified him as a "beneficiary member";

   (3) That he had intentionally stopped his payments on assessments with a view of severing his connection with the lodge.

2. **Benefit Societies**: UNITED WORKMEN: VOLUNTARY ASSOCIATION. The United Workmen is a mere voluntary association and a member may at any time sever his connection therewith.

3. **Insanity**: TEST OF: MONOMANIAC. If one has capacity to understand the nature and effect of a transaction, his acts in relation thereto are valid, though his mind may be impaired by age or disease; and to invalidate a contract because of monomania it must appear that the partial insanity related to the subject of such contract.

4. **Benefit Societies**: ADMINISTRATION: DUTY OF COURTS. Benefit societies being mutual insurance companies dependent upon assessments should be permitted to adopt and enforce reasonable rules and the courts ought not to interfere with their administration except for most urgent reasons.

*Appeal from the Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

REVERSED AND REMANDED (with directions).

FREDERICK H. BACON and GRANT I. ROSENZWEIG for appellant.

(1) The true construction of the laws of the order, under which plaintiff claims that Stone was relieved from the payment of dues and assessments, is that before a member can require the lodge to pay assessments for him he must be unable, through sickness or other disability, to follow his usual business, or some other occupation, etc. Curtin v. Grand Lodge, 65 Mo. App. 294. (2) It is a reasonable provision in by-laws that the lodge must determine the fact of sickness. When the lodge has so determined the facts the courts will not reverse the decision of the lodge, which is final. Van Poucke v. The Netherland Soc., 63 Mich. 328; 29 N. W. Rep. 863; Canfield v. Maccabees, 87 Mich. 626; Robinson v. Templars' Lodge, 97 Cal. 62; 31 Pac. Rep. 609; Woolsey v. Odd Fellows, 61 Ia. 429; Appeal of Sperry, 116 Pa. St. 391; 9 Atl. Rep. 478; Anacosta Tribe v. Murback, 13 Md. 71; 71 Am. Dec. 625; Grand Central Lodge v. Grogan, 44 Ill. App. 111. (3) Stone was not at the time he was reported sick, a beneficiary member within the provisions of law 139, whether that sickness be regarded as commencing about the time he was reported sick, or whether it is regarded

as dating back three or four months. Wiggin v. Knights of Pythias, 31 Fed. Rep. 122, 125; Buckofzer v. Grand Lodge, 15 N. Y. Sup. 922. (4) At the time of Stone's suspension, October 28, 1895, he was not a beneficiary member entitled to have his assessments paid by the lodge. (5) Stone, at the time of his suspension for nonpayment of assessments, had withdrawn from the order by expressly refusing to pay the assessments and requesting to be allowed to become suspended, hence by his conduct and declarations he became estopped from claiming any rights of membership. A member can withdraw from such an order at any time. Borgraefe v. Knights of Honor, 26 Mo. App. 224; Stewart v. Supreme Council, etc., 36 Mo. App. 319, 332; Miller v. Grand Lodge, 72 Mo. App. 505; Scheele v. State Home Lodge, 63 Mo. App. 282; Glardon v. K. of P., 50 Mo. App. 45; Supreme Lodge v. Wilson, 66 Fed. Rep. 785. (6) If Stone at the time of his suspension and withdrawal from the order was partially insane, it did not destroy or invalidate his action in withdrawing, because such partial insanity did not relate to his connection with or withdrawal from the order, but if any existed it related to his physical infirmities alone. To invalidate an instrument because of partial insanity, it must appear that such insanity related to the subject-matter of the contract in question. Cutler v. Zollinger, 117 Mo. 92-101; Rhoades v. Fuller, 139 Mo. 179; Wells v. Mutual Benefit Ass'n, 126 Mo. 637; Parsons on Contracts [7 Ed.], 383; Benoist v. Murrin, 58 Mo. 307; Wharton & Stille's Medical Jur., sec. 3; Jenkins v. Morris, L. R. 14 Ch. Div. 674; Blount v. Spratt, 113 Mo. 48; 2 Pomeroy on Equity Jur., sec. 946; Bank v. Moore, 78 Pa. St. 407. (7) Insanity does not excuse the failure to pay assessments or giving notice to the lodge of sickness, if notice is required. Walsh v. Consunnes Tribe, etc., 108 Cal. 496; 41 Pac. Rep. 418; Hawkshaw v. Knights of Honor, 29 Fed. Rep. 770; Yoe v. Masonic Ass'n, 63 Md. 86; Carpenter v. Centennial Ass'n, 63

Ia. 453; 27 N. W. Rep. 456; Noel v. Modern Woodmen, 61 Ill. App. 597.

E. W. Shannon and M. A. Fyke for respondent.

(1)   The various conditions attached to who shall receive sick benefits apply to the subordinate lodge, "in the contract for payment of which the local lodge is principal." Curtin v. Grand Lodge, 65 Mo. App. 299; State ex rel. v. Grand Lodge, 70 Mo. App. 466, and citations; Bacon on Benefit Soc. [New Ed.], secs. 362, 433, and citations; Helme v. Ins. Co., 61 Pa. St. 107.   (2)   At the time Mr. Stone was suspended, October 28, 1895, he was sick and insane and he was sick and insane during October, September, August, July, June and May previous to October 28, 1895.; this the court finds as a fact, and the finding is supported by the record.   Ginest v. L. Union St. Joseph, 141 Mass. 417; Niblack on Ins., sec. 318.   (3)   "Forfeitures are not favored and the courts are always ready to seize hold of any circumstances that can reasonably avoid so harsh a measure as forfeiture."   Bacon on Ben. Soc. [New Ed.], pp. 767, 772, secs. 362, 377, 379, 389; Mut Endowment Ass'n v. Essender, 59 Md. 463; Connelly v. Shamrock, etc., Soc., 43 Mo. App. 283; Bates v. Benefit Ass'n, 51 Mich. 587; Brand v. Grand Lodge, 26 N. W. Rep. 95; Niblack on Ins., p. 501; Dist. Grand Lodge v. Cohn, 20 Ill. App. 335; Scheufler v. Grand Lodge, 47 N. W. Rep. 799; 45 Minn. 256; Mulroy v. Knights of Honor, 28 Mo. App. 463.   (4) The suspension for non-payment of dues was illegal, not only because under the rulings cited herein Stone could not be suspended while sick, but for the further reason that he was never notified as required by the laws of the order, and never had a trial, but the suspension was ex parte.   Robinson v. Yates City Lodge, 86 Ill. 598; Norwcod v. Guerdon, 60 Ill. App. 258; Ins. Co.

v. Toote, 79 Ill. 366; Scheufler v. Grand Lodge, 47 N. W.
Rep. 799; 45 Minn. 256; High on Extraordinary Remedies,
sec. 295; Bacon on Benefit Societies, sec. 389, pp. 767, 768,
770, 772, and cases cited; Mutual Endowment Ass'n v.
Essender, 59 Md. 463; Modern Woodmen of Am. v. Deters,
65 Ill. App. 368; Eddy v. Ins. Co., 65 N. H. 27; s. c., 18
Atl. Rep. 89; Mulroy v. Knights of Honor, 28 Mo.
App. 463. (5) Although Stone was able to do some work,
he was not able to follow his usual employment; and his
sickness being continuous, he was entitled to the right of
having his assessments paid by his lodge. Neil v. Order of
United Friends, 28 N. Y. Sup. 928; Niblack on Ins.,
sec. 403; Ginest v. L. Union St. Joseph, 141 Mass. 417.
(6) The order, by its rulings and interpretations hereto-
fore mentioned, and by the issuing of a prospectus as an ·in-
ducement for new members to join the order and for old
members to retain their membership, reciting that "a mem-
ber can not be suspended while sick or disabled, his lodge
being required to pay for him," will not be permitted to set
up a forfeiture. Niblack on Ins., secs. 297, 299, 301, 305,
307; Hally v. Ins. Co., 105 N. Y. 437; Dennis v. M. B.
Ass'n, 120 N. Y. 501; Miller v. Grand Lodge, 72 N. W.
Rep. 48; Neil v. Life Ass'n, 72 N. W. Rep. 74, Hoeffner
v. Grand Lodge, 41 Mo. App. 359. (7) It is con-
tended that Stone withdrew from the order. The evi-
dence shows that he was insane and sick on October
28, 1895, when McDonald says he had his conversation
with Stone about withdrawing from the order. The
trial court heard McDonald's testimony and was in a bet-
ter position to observe whether his testimony was true. "No
questions of waiver can arise in the case of an insane per-
son." Hoeffner v. Grand Lodge, 41 Mo. App. 368. (8) As
to the question of Stone's sickness and as to the other evi-
dence in this case, the trial court had an opportunity of seeing

and hearing the witnesses, and the questions of fact involved will be resolved in favor of upholding the conclusions of the trial court, even in equity cases. Rawlins v. Rawlins, 102 Mo. 563; Mathias v. O'Neill, 94 Mo. 530, and cases cited; Parker v. Roberts, 116 Mo. 657. But this is an action at law and the court will not review the finding of the trial court. Martin v. Nichols, 54 Mo. App. 594; Garrett v. Conklin, 52 Mo. App. 654; Pitkin v. Mott, 56 Mo. App. 401; Griffith v. Material & Constr. Co., 46 Mo. App. 539.

GILL, J.—This is a proceeding in mandamus where it is sought to have B. D. Stone, an insane person, reinstated to membership in the defendant order from which he had been expelled for failure to pay certain assessments. At the trial below plaintiff was awarded a peremptory writ and defendant appealed.

The defendant is a benevolent fraternal corporation organized to aid its members in case of sickness and distress and to pay, according to a beneficiary certificate, a life indemnity of $2,000 on the death of a member. Numer-

STATEMENT. ous subordinate lodges are organized throughout the state, and among them one at Kansas City, of which said B. D. Stone was a member. The members are taxed in various ways for the support of the order and to provide a life insurance fund. Two only of them need be mentioned. For the relief of sick members and general support of the subordinate lodge at Kansas City, quarterly dues were required of its members—one dollar and twenty-five cents, payable by each member on or before the last days of March, June, September and December of each year. To make up the "beneficiary fund," as it is called, to pay the death losses, throughout the country, the parent organization, the grand lodge, makes its assessments through the local lodge on the members. These calls are made the first of each month and must be paid on or before the twenty-eighth day

thereof, in default of which the member becomes *ipso facto* suspended from all rights and benefits of the order.   Default for three months in the payment of dues disqualifies the member from receiving sick benefits; and if he becomes in arrears for six months he is liable to suspension from the order.

On the first of October, 1895, the grand lodge made certain assessments for the beneficiary fund, which said B. D. Stone failed to pay, and on account of which default he was considered as suspended and as having forfeited his life insurance.   In the March following (1896), Stone was adjudged insane and sent to the state asylum at St. Joseph, where he was still confined at the trial of this case.

The point in controversy is, whether or not under the laws of the society and the facts in the case said Stone was legally suspended October 28, 1895, because of his failure to pay the assessments last above mentioned.   Plaintiff contends that said suspension was illegal and improper, because at that time, it is claimed, Stone was sick and insane so as to cast the burden of paying such assessments on his local lodge.

The laws of the order relating to this matter are as follows:

"Law 138.—Subordinate lodges may or may not provide in their by-laws for the payment of weekly sick benefits.

"No Suspensions During Reported Sickness.—Provided, that any member who is reported to the lodge or to the relief committee as being sick or disabled, and who is a beneficiary member, according to the provisions of law 139, shall not become suspended on dues or assessments during such sickness or disability."

"Law 139.—Who Entitled To.—Any member of the lodge, who, through sickness or other disability, is unable to follow his usual business or some other occupation, shall be considered a beneficiary member, entitled to receive such benefits as the by-laws prescribe.

"If Not In Arrears.—Provided, that such member is not in arrears to the lodge for the amount of three months dues, and that he is a member of the Workmen Degree.

"Sickness Must Not Be of a Permanent Character.— And that his sickness is not of a permanent character or such as does not prevent other men, similarly afflicted, from pursuing their avocations.

"Or Result From Vices.—And provided, that his sickness or disability has not originated from intemperance, vicious or immoral conduct.

"Or Diseases Previous to Initiation.—And provided, that he is not disabled by any disease or infirmity by which he was afflicted previous to his initiation into the lodge.

"Lodge May Reduce Amount at End of Six Months.— And provided, that the lodge may reduce the benefits for a brother fifty per cent, if the lodge has been paying him sick benefits for the space of six months.

"Three Months in Arrears. No Benefits.—And a member who shall be taken sick or be disabled while in arrears to the lodge to the amount of three months' dues, can not, by payment of his arrearages, becòme a beneficiary during his sickness."

It will be seen that before a member can be entitled to have his lodge pay his dues and assessments he should fill the description of "beneficiary member," and that is by the above laws defined as one (1) "who, through sickness or other disability is unable to follow his usual business or some other occupation," (2) is not in arrears to the local lodge for three months' dues, (3) cickness must not be of a permanent character, etc.; and in addition it is provided that such beneficiary member must have been reported to the lodge or the relief committeè as being sick.

The briefs contain lengthy discussions of points relating to the proper construction of the above laws, much of which we deem unnecessary to mention. · In our view of the case,

UNITED work-
men. by-laws:
construction:
suspension.

Stone was not at the date of his suspension, October 28, 1895, entitled to be classed as a "beneficiary member," and therefore had no right to call on his lodge to pay his assessments. The evidence falls far short of proving that at that time he was "through sickness or other disability unable to follow his usual business or some other business." Viewing the evidence most strongly in plaintiff's favor it can only be justly claimed that during the year preceding his suspension he had occasional spells of despondency and nervousness which to some extent impaired his efficiency as a canvasser and salesman. He was severely afflicted with a chronic case of piles, so much so that in June, 1895, a surgical operation was performed. During the months of May, June and July his lodge paid his assessments to the grand lodge and in addition contributed different sums of money for his relief. But a few weeks after the operation he was about again, attended several lodge meetings, and himself paid the grand lodge assessments for the months of August and September, 1895. During these months, and at the date of his suspension in October, Stone was not incapacitated from following "his usual business or other occupation," which disability must attend the member before he can, under the laws above quoted, demand of the lodge payment of his dues and assessments. He had apparently recovered from the effects of the surgical operation and was reported to his lodge as restored to health. The evidence shows, however, that he was not so vigorous and efficient as formerly, and did not in fact earn as much as he had theretofore; yet he was able to and did work prior to, at and subsequent to the date of suspension.

In addition to this, Stone was at the time of his suspension delinquent on his lodge dues for more than three months, and this disqualified him as a "beneficiary member." He was, as the proof shows, more than six months in arrears

for dues; was on that account reported to the lodge, and for that reason also suspended.

A more satisfactory reason for refusing to restore Stone to membership appears in the record. The evidence conclusively shows that Stone yielded to the suspension of October 28, 1895, and intentionally abandoned the order for the time being. On that day, he called on the collector or financial secretary of the lodge, and said to him (quoting from the abstract) "that he was going to let the lodge business drop for a while and wouldn't pay the assessments, assigning as a reason that times were hard, close money matters and that he wouldn't pay them and he didn't pay them." This in effect, was repeated to the same officer a short time thereafter. The witness stated that Stone's conversation and conduct was entirely rational and that he discovered nothing that indicated an unbalanced mind.

After suspension, and during the winter of 1895-6, other members of the lodge met Stone at different times and talked over the matter of his suspension. In each instance he expressed regret at being obliged to drop his membership; said it was his intention to get reinstated as soon as times got better and he could afford it. And to more than one of these parties expressed his gratitude to the lodge for the generous treatment he had received; said in effect that he could be reinstated at less cost by waiting six months and then come in as a new member; and this appears to have been correct. It would have been less expensive to wait the six months and then apply as a new member rather than come in by paying up all delinquent dues and assessments.

Conceding then that during these times Stone may have had occasional attacks of melancholy or mental disturb- BENEFIT socie- ance, and that they grew more and more ties: United Workmen: vol- frequent until permanent insanity resulted, untary associa- tion. as the evidence tends to prove, yet, from the

testimony it is clear that said mental derangements were only intermittent, and that the delusions referred to had no relation to his lodge connections. As to the latter it clearly appears that he well understood the nature of his obligations to the lodge and that he was suspended because of the failure to pay the assessments, and that he voluntarily at the time renounced his membership. The order in question is a mere voluntary association, and unquestionably a member may at any time sever his connections therewith. Borgraefe v. Knights of Honor, 26 Mo. App. 218; Scheele v. State Home Lodge, 63 Mo. App. 277; Miller v. Grand Lodge, 72 Mo. App. 499.

From the evidence it is plain that Stone fully understood what he was doing. He intended to, and did abandon the contract of insurance he had once entered into with the defendant and the courts should give effect to that intention.

INSANITY: test of: monomaniac. "The legal test is the capacity to understand the nature and effect of the transaction. If a person understands the nature of the business in which he is engaged and the effect of what he is doing, his acts are valid and this is true though the mind of such person may be impaired by age or disease. 1 Pars. on Cont. [7 Ed.], 383. * * * It is now quite well settled that a person may be insane upon one subject, and yet sane upon other subjects. To invalidate an instrument because of monomania or partial insanity, it must appear that the partial insanity related to the subject of the contract in question. Nor do delusions or hallucinations avoid capacity if not touching the subject-matter of the contract." Cutler v. Zollinger, 117 Mo. 92, and authorities cited.

While the circumstances surrounding this man Stone and family are such as to elicit sympathy, it will not do, in the face of the rules of the order and the testimony, to enforce his restoration to membership. This is to a certain extent a mutual insurance company, acquiring the revenue necessary to pay death losses from small periodical assessments on

BENEFIT societies: administration: duty of courts.

its numerous members scattered over the country. They can not exist or meet the demand of legitimate losses unless permitted to adopt and enforce reasonable rules and regulations; and the courts ought not to interfere with the administration of their affairs except on most cogent reasons.

In my opinion the judgment of the circuit court ought not to stand. The other judges concurring, it will be reversed and remanded with directions to dismiss the petition.