**BOLAND v. SHELL OIL CO., Inc.**

No. 4756.

District Court, E. D. Missouri, E. D.
May 16, 1947.

Walker Woolridge, of Wentzville, Mo., and Clem F. Storckman, of St. Louis, Mo., for plaintiff.

Thompson, Mitchell, Thompson, & Young and Edmonstone F. Thompson, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

John J. Boland, now deceased, in May 1945 executed an agreement with defendant leasing to defendant a tract of ground improved for gasoline filling station business, located at the intersection of U. S. Highways 61 and 40, in Wentzville, Missouri. The lease was for a period of 10 years from the first of July, 1945. Plaintiff is the widow of John J. Boland and sues individually as sole heir under the will and as executrix to cancel the lease.

The complaint alleges John J. Boland first leased the premises to defendant in April, 1940 for a period ending the 30th day of June, 1945. Subsequently the parties executed an agreement giving defendant an option to extend the lease for a period of five years. The parties signed an agreement reducing the rent in 1943. The theory of plaintiff's case is that prior to May 18, 1945 Boland suffered several paralytic strokes and became mentally infirm and that at the time of the execution of the lease he was "incompetent, blind and physically and mentally infirm", and the agents of the defendant by "protestation of friendship and by false and fraudulent display of interest in the financial and personal well-being of said John J. Boland

and his family, gained the confidence of said John J. Boland and caused him to be unduly influenced", and fraudulently represented that because of "rent regulations" the existing lease would have to be abandoned and a new lease executed and the rental reduced from $1,620 per year to $100 per month; that because of his physical condition, and believing the "false and fraudulent statements" Boland did, at the direction of defendant's agents, execute the lease in question. It is further charged that the lease is without consideration and lacks mutuality. The answer denies the charges.

Cancellation of the lease is urged upon two grounds: (1) mental incapacity of John J. Boland to execute the agreement and because of such condition, coupled with fraudulent representation, the signature of Boland to the lease was secured by fraud; and (2) the lease lacks mutuality.

■ The record fails to support plaintiff's charges on point one. Boland first suffered a cerebral hemorrhage in 1940. The disease grew progressively worse. It involved paralysis on the left side. His power of speech and eyesight were affected. By May of 1945 he was totally disabled, confined to his home, and blind. There was testimony that at times he did not seem to be oriented. There was some deterioration of his mental faculties. No witness testified that at the time of the execution of the lease Boland was irrational and unable to understand or carry on business transactions. There are no facts in evidence from which such a finding can be inferred. His doctor testified that he was usually lucid but that he had periods of mental incapacity. Plaintiff testified that her husband at times had difficulty remembering but that she always felt that he was capable of taking care of his own business. Her husband had other property than the filling station property and rooms were rented in the home. He took care of all of the income from this property and managed the payment of expenses for household necessities. A few days prior to the execution of the lease he refinanced a loan on the home by execution of a deed of trust and note. A number of witnesses testified that Boland did not want his wife or anyone else to interfere with his handling of his business affairs.

Representatives of the defendant called on Boland a number of times prior to the execution of the lease in May, 1945. Some of the visits were purely social and at others the execution of a new lease was discussed. There was some testimony—not of a definite character—as to comments by defendant's agents concerning gasoline rationing. Defendant's agents informed Boland that their present lease was about to expire. This was true. There was no necessity for giving any further reason for the execution of the new lease. On the day of the execution of the lease defendant's agents and Boland discussed the lease paragraph by paragraph. It was read over to him before it was signed. There was bargaining back and forth as to the amount of the rental. A nephew of Boland was called in to take the acknowledgment to the lease. After the lease was executed and defendant's agents had left, Boland discussed the lease in a rational manner and told his wife and nephew that he had to make a new lease, that he could not get out and take care of himself and that he did the best that he could. There is a total lack of substantial evidence that Boland's mental condition was such as to show that he did not possess sufficient mind to understand in a reasonable manner the nature and effect of the act in which he was engaged in the execution of the lease.

■ The law is set out in the case of In re Nelson's Estate, Mo.App., St. Louis, 1945, 185 S.W.2d 890, loc.cit. 895, that "* * * to invalidate an act or a deed of a person, it is not sufficient to merely show that he or she suffers from senile dementia, or is possessed of a mental weakness. One must go farther, and show that the person does not possess sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. 32 C.J. 726; 28 Am.Jur. p. 701, par. 66; Pennington v. Stanton, 125 Mo. 658, 28 S.W. 1067; Cutler v. Zollinger, 117 Mo. 92, 22 S.W. 895; State ex rel. Stone v. Grand Lodge, etc., 78 Mo.App. 546; Richardson v. Smart, 65 Mo.App. 14."

■ Plaintiff had that burden of proof. We give to plaintiff's testimony such rea-

sonable inference as it is entitled to under the rules in reaching this conclusion. See Pennington v. Stanton, 125 Mo. 658, 28 S.W. 1067.

The charge that the lease lacks mutuality presents a close question. Paragraph 12 of the lease provides: "Shell, at its option, by giving at least thirty days notice to Lessor, may terminate this lease at any time during the original or any extended term thereof."

Aside from the payment of $100 per month rental in advance, we are unable to find that defendant has any obligations under the lease that would not exist in the absence of a lease. Plaintiff presents her position on this phase of the case that "a promise to do what one is required by law to do is no consideration for a contract." In re Wood's Estate, 288 Mo. 588, 232 S.W. 671.

█ We conclude that determination of the present question turns principally on whether or not the agreement to pay rent at the rate of $100 per month during the term of the lease is a sufficient consideration to support the lease including the cancellation clause. It is not necessary for mutuality that every covenant be mutual. The lease between Boland and defendant need not contain a specific consideration passing to the lessor to support the cancellation privilege accorded the lessee. In Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, 807 a suit to cancel an oil lease, the court was presented with the question of consideration necessary to support a provision of the lease which gave lessee the right to cancel the lease at any time. The court held that a consideration of $1 was sufficient to make the lease effective and "to support every stipulation in it favorable to the lessee, including the option to surrender it at any time. * * * Resting, therefore, upon an executed and valuable consideration, the lease was not wanting in mutuality merely because it reserved to one party an option which it withheld from the other." We agree with plaintiff's contention that without the lease defendant would be required, Sec. 2971, R.S.Mo. 1939, Mo.R.S.A., to give a "thirty day" (one month) notice of cancellation but the obligation to pay specific rent and payment of rent of $100 per month

since July 1, 1945, arises only by virtue of the written lease.

█ This is a diversity case and is governed by the decisional law of Missouri, if any there be. In National Refining Co. v. Cox, Kansas City App. 1933, 227 Mo.App. 778, 57 S.W.2d 778, 779, a filling station lease was under attack on a charge of lack of mutuality because the plaintiff lessee "is given the right to cancel the lease by giving thirty days' notice to the lessors". In the National Refining Co. case after the property owner had leased the property to the oil company, the oil company at the same time executed a contract subleasing the property to the property owners to operate the filling station and sell the oil company's product. The opinion is not based upon the independent or concurring contract between the oil company and the owners to operate the filling station. 57 S.W.2d loc. cit. 781. "We may assume, for the purposes of this case, that the employment of defendant as agent by plaintiff was terminated, as contended by defendant. But we do not think that this deprives plaintiff of the right to an injunction because we are of the opinion that *the lease, itself,* is sufficient grounds upon which to predicate such a proceeding." (Emphasis added.)

The defendant contended, as plaintiff contends here, that the lease did not obligate the lessee "to do anything". In disposing of this contention adverse to the lessor the court refers to those provisions in the lease which indicated that the property would be used for filling station purposes. The lease, like the one now before the court, did not so provide, but it was held that the implication was plain. There was a paragraph in the lease referred to by the court, which is in the lease before this court, that in the event the property could not be operated as a filling station because of some legal obstacle the oil company might terminate. Also if the property was destroyed by fire the lessee could make the repairs. Similar provisions are in the lease in issue. These provisions, in addition to the obligation to pay rent were singled out by the court in the National Refining Co. case as indicating a consideration to support the cancellation clause in the lease, which the court disposes of in the following lan-

guage (57 S.W.2d loc. cit. 781): "The fact that plaintiff reserved the right to cancel the lease upon giving thirty days' notice, while a like right is not given to the defendant, does not deprive it of its bilateral character. * * * The rule is against construing a contract as unilateral and in favor of the construction that will make it valid, if such a construction can reasonably be made."

In Wright v. Fuel Oil Co., 1938, 342 Mo. 173, 114 S.W.2d 959, the court singles out that provision of the contract which defeated the contention of the lessor that an implied obligation rested upon the lessee, Fuel Oil Company, to furnish gasoline to it as lessor "operator" and storer-distributor. The provision was that the lessee was to deliver gasoline only as it elected to do so. The court distinguished the National Refining Co. case in respect to this point, by saying: (114 S.W.2d loc. cit. 962) "In the National Refining Company case, supra, the subject of implied obligation is considered, but there was nothing in the contract there involved which permitted the refining company to furnish gasoline as it might elect."

Similarly, in the case before us, nothing appears in the Shell contract which permits that company to perform its obligations under the lease as it may elect to do so. Instead, the import of the contract is one of "an intention of continuity of the business."

In Tebeau v. Ridge, 1914, 261 Mo. 547, 170 S.W. 871, L.R.A.1915C, 367, the court had under consideration an option contained in a lease contract. The lessor denied there was any consideration to support the option. The court held (170 S.W. loc. cit. 875): "We are fully convinced that, when an option to purchase is contained in a lease, the payment of the stipulated rent reserved is a sufficient consideration for the agreement to convey * * *."

[8] We think it follows that "payment of the stipulated rent" should support the cancellation clause. See also 35 C.J. p. 1145; 13 C.J. p. 331. See also 17 C.J.S., Contracts, § 100.

There are cases in other jurisdictions which tend to support the plaintiff's position of lack of mutuality in the lease contract in the cancellation clause, but inasmuch as we are bound to follow the Missouri deci-

sions no useful purpose would be served by discussing those cases. We find no Missouri case which supports plaintiff's position.

Findings of fact, conclusions of law and judgment dismissing plaintiff's complaint in accordance herewith may be submitted.