JOHN A. SMITHERS, Respondent, *v.* RUDOLPH BIRCHER, Appellant.

### June 19, 1876.

1. Where a representation is made of a material fact, which was understood at the time and accepted as a warranty, this is sufficient to hold the vendor, though in good faith and innocently mistaken.

2. Where a petition sets out a representation and affirmation of certain facts, on the faith of which plaintiff received certain notes, this is sufficient to hold defendant as warrantor. No particular phraseology need be set out

or proved; nor need the pleader charge in terms that defendant warranted the truth of his statements.

3. Where defendant sold certain real estate notes, indorsing them without recourse, and saying they were well secured and first liens on real estate, and the notes were accepted by plaintiff on the faith of these representations, *held*, that defendant was liable as warrantor.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Krum & Madill*, for appellant, cited: David v. Park, 103 Mass. 501; Baumeister v. Alderman, 111 Mass. 261; Fisher v. Mullen, 103 Mass.; Bennett v. Judson, 21 N. Y. 238; Wakeman v. Dalley, 51 N. Y. 27; Langdon v. Green, 49 Mo. 363; Wannell v. Kim, 57 Mo. 478; Lindsay v. Davis, 30 Mo. 406; Collyer on Suretyship, 1, 2; Hammond v. Espy, 1 Wilson (Ind.), 536; Joliffe v. Collins, 21 Mo. 338; Peers v. Davis, 29 Mo. 184; McFarland v. Carver, 34 Mo. 195; Owens v. Rector, 44 Mo. 389; Langdon v. Green, 49 Mo. 363; Hazard v. Irwin, 18 Pick. 95; Wakeley v. Dalley, 51 N. Y. 27.

*Glover & Shepley*, for respondent, cited: Wannell v. Kim, 57 Mo. 478; Rawlins v. Wickham, L. J. 28; N. Y. Eq. 188; N. B. & Canal Co. v. Maggendie, 1 Drew. & Sm. 363; Carter et al. v. Black, 46 Mo. 384; Baker v. Scudder, 56 Mo. 272; Edwards v. Marcy, 2 Allen, 490; Cabot v. Christie, 42 Vt. 121; Frenzel v. Miller, 37 Ind. 9; Warner v. Daniels, 1 Woodb. & M. 90; McFarran v. Taylor, 3 Cranch, 281; Hamman v. Espy et al., 1 Wilson, 536; Bennett v. Judson, 21 N. Y. 238; Edw. on Bail. 201, 225, 251; Story on Bail., sec. 287.

BAKEWELL, J., delivered the opinion of the court.

The plaintiff claims in his petition that, on February 20, 1871, he owned a lot of ground in St. Louis, which defendant then proposed to buy for $90,000. The payment was to be made by assuming an indebtedness of $35,000 to become due, and then a lien upon the property sold; the remaining purchase money was to be paid partly in cash,

and partly in good real estate notes held by appellant, which notes were to be equivalent to cash, and secured by deeds of trust, constituting the first liens on the real estate securing these notes. A portion of the debt due on the premises sold, and assumed by the purchaser, was payable, as to principal and interest, in gold. Upon the payment of the consideration in this manner, plaintiff was to execute a deed and pay appellant the difference between gold and currency, as each payment of the interest and principal of the debt payable in gold was made by appellant.

That plaintiff accepted defendant's proposition, and, before any conveyance was made to defendant by plaintiff, said defendant exhibited to plaintiff—as a part of said consideration, which he was to pay either in cash or notes of other parties so held by him, and the payment of which was to be secured by deeds of trust upon real estate, which deeds of trust were to be first liens or incumbrances upon the real estate securing the same—a note for $12,000, dated May 20, 1870, payable to the order of defendant five years after date, made by Stanford Graves, together with ten interest notes for $600 each, at intervals of six months from that date, and represented to plaintiff that all of said Graves' notes were secured by a first deed of trust, dated May 20, 1870, executed by said Graves upon a valuable tract of land in Jefferson county, Missouri, of greater value than the notes, which tracts of land are described as follows: (describing them) together with a steam-mill, barn, and dwelling, and other houses erected thereon, and exhibited a policy of insurance thereon, from loss or damage by fire, and, at the same time, represented that said notes so signed and secured by said deed of trust were as good as, and equivalent to, cash; that, relying upon the representations and statements of defendant, before mentioned—as to the character of the notes, and as to the notes being the first deed of trust and incumbrance on the real estate securing them, and that the real estate was of greater value than the

notes, and that the insurance was an insurance upon the buildings upon the land mentioned in the deed of trust—plaintiff made no examination of the premises or of the title, but accepted the notes upon the faith of these statements and representations, and, in consideration of the transfer to him by defendant of said notes and policy of insurance as represented, accepted said notes of $12,000 as so much cash, and, in further consideration of the payment by defendant of $35,000.89 in cash, and the delivery by said defendant to plaintiff of notes of other parties, similarly secured, for the balance, said plaintiff made to defendant a deed of the Smithers' building and lot, and put him in possession, and entered into an agreement to pay the difference on the gold loan between gold and currency; that all the representations made by defendant were false; that said notes were not equal and equivalent to cash, nor was said deed of trust the first lien and incumbrance upon said real estate described therein, nor were the buildings purporting to be insured by said policy on the real estate in said deed described—but the notes at the time were worthless, and part of the interest notes have become due and remain wholly unpaid; that Graves had, prior to May 20, 1870, conveyed the real estate described in the afore-mentioned deed to Henry Dausman, trustee of John E. Ligget, to secure the payment of three principal notes—one for $1,380, at one year, one of $2,400, at two years, and one for $8,220, at three years after date—all of which remain wholly unpaid; that the real estate described in said deed of Graves to Dausman, as trustee, is worth no more than the amount of the notes secured thereby; that said notes of said Graves, payable to, and delivered by, defendant to plaintiff, are wholly unpaid; that, in August, 1872, Graves applied, in the United States District Court, at St. Louis, to be declared a bankrupt; that Graves is wholly insolvent; that said plaintiff would not have executed to defendant the deed had he known that said notes of Graves, so proposed

to be given to him as part of said purchase price, were not secured by a first deed of trust upon the property in said deed described; that, before suit, he offered and tendered to defendant the note of said Graves, and deeds of trust so received from defendant, and demanded from him the amount of the consideration money for said purchase still remaining unpaid, being the sum of $12,000, and interest upon the same, at the rate of 10 per cent. per annum, from the date of said sale, which he refused, and plaintiff brings the said notes and deed of trust into court, ready to be delivered to said defendant, and asks judgment for the sum of $12,000, with interest at 10 per cent. from the day of the sale.

The answer of defendant denies every material allegation in the petition involving any statement, or agreement, or representation upon which an action by respondent could be based by reason of said Graves' deed of trust not being a first lien, or the notes secured by it not being as good as, or equivalent to, cash, or on account of the value of the premises, or any question of insurance. The answer also contains affirmative averments, by way of further defense, of which the following are the substance: That, at the time appellant agreed to purchase the respondent's premises, it was understood and agreed between them that the notes delivered respondent, in part payment of the purchase money, were to be, and in fact were, accepted by respondent, with appellant's indorsement, "without recourse," to him thereon; and that said notes, including Graves' notes, were, in pursuance of said agreement, so indorsed by appellant; that it was also understood and agreed that, in no event, should appellant be liable on, or on account of, any of said notes, either to respondent or to any other person. The answer also further averred that the principal note and seven interest notes were not due when the suit began.

No reply was filed to this answer.

It appeared from the evidence in this case that E. G. Obear, a real estate agent, had for sale for the owner, Smithers, a lot in St. Louis, on which was erected "the Smithers' building." About February 20, 1871, Obear effected a sale of this property to Bircher. The price demanded was $100,000; but it was, after one or two interviews between Obear and Bircher, sold for $90,000 cash. Bircher says that, at the time the terms were agreed upon, he told Obear that he should pay part in cash and part in real estate notes equivalent to cash; but Obear's recollection is that the proposition to take real estate notes was not made till after the terms had been agreed to. On March 1st the sale was consummated. Smithers says that he then first heard of the proposition to take real estate notes in part payment; but the proposition had been accepted by Obear about a week before that date. It was agreed between Obear and Bircher that the real estate notes to be taken were to be equivalent to cash. Amongst these notes was one of Stanford Graves for $12,000, with semi-annual interest notes at 10 per cent. Bircher stated to Obear that this note was a first lien on property in Jefferson county, for sufficient value to fully secure the loan, that he had seen the property, that there was a good house on it, and that the title was perfect. Several days before the consummation of the sale, Bircher left with Obear, for his inspection, the deeds of trust securing the real estate notes which were to be taken instead of cash, a policy of insurance on the house in Jefferson county, and abstracts of title to each piece of property. Obear says that he reported the proposition, to give real estate notes, to Smithers as soon as it was made. The recollection of Smithers is that he first heard of this proposition on March 1st, when the parties met at Obear's office to consummate the sale. His testimony is that, when he went to Obear's office on March 1st, Bircher produced some notes and said: "If you don't need all the money, you will save me the

trouble of raising it by accepting these notes; they are all first liens on the property, secured by deed of trust. They are better than cash." Graves' note was amongst the lot, and Smithers spoke of it as being secured by country property; whereupon Bircher said the property was worth $30,000. Bircher then said he could indorse all the notes "without recourse." Smithers replied that he did not care how he indorsed them, if they were as represented. Bircher said there was a fine brick house on the property, and that there would be no trouble about the notes. There was no conversation between Smithers and Bircher about the sale before the day on which it was consummated. Bircher says that, when he took the examinations to Obear, he said: "You can look at them and see; these are the examinations of title; there is the deed of trust." And Obear replied: "I know they are all good, if you took them." Judge Krum, the attorney of Bircher, testified that he saw the certificate of examination of title of the Graves' property soon after it was made; that, soon after the sale of the Smithers' building had been agreed on, Obear asked him what he knew about the Jefferson county land, to which Judge Krum replied that he knew nothing about it except that he had passed upon an abstract of title submitted to him.

Sometime after these transactions Obear, acting for Smithers, sold this Graves note to Charles Jones, who gave him his check in the afternoon, and took away the note. The next morning Jones got back his check, returned the note, and stated that he had heard that there was a prior deed of trust on the property. This turned out to be true. Not only was there a prior deed of trust for $12,000 on the property, but the portion of the farm containing the dwelling-house was not included in the description in the Bircher deed of trust. The premises turned out to be security for no more than the first incumbrance, and Graves was insolvent.

There is no question made as to the good faith of Bircher in the transaction; and that he fully believed the statements he made in regard to the matter to be true is not disputed. He was at once notified of the worthlessness of the note, and asked to make it good. This he positively refused to do, stating that the notes were good when he gave them; that he got the building dear enough, and that he had nothing to do with the papers.

Obear and Smithers both swear that they took the notes relying wholly on Bircher's statements in regard to the matter. Obear says that he looked over the abstract of title furnished by Bircher, and understood it, but that he made no examination himself, and caused none to be made, as to the value or title of the property. He had known Bircher for many years, had done business for him, and had implicit confidence in his carefulness, business sagacity, and truth.

As one of the liens upon the property sold, assumed by appellant, was payable in gold, it could not be foreseen precisely how much would have to be paid in currency to discharge the interest as it matured and the principal, and respondent agreed to return to appellant the premium which he might have to pay for gold in discharging this lien. The Graves note, for $12,000, was deposited with Obear as a collateral to secure the performance of this agreement. Appellant, under the agreement, paid $3,218.75 for premiums on gold. It does not appear that any part of this has been repaid by plaintiff to defendant.

Both the parties and Obear resided in St. Louis. This suit was commenced July 8, 1872, the day on which appellant refused to pay the Graves notes—nearly three years before the principal note of Graves became due. On August 22, 1872, the petition in bankruptcy was filed against Graves, and he was adjudicated a bankrupt on November 12, 1873. It does not appear what dividend was paid out of the estate in bankruptcy.

On April 23, 1875, a month before the principal note of Graves matured, the jury in this case returned a verdict for plaintiff for $16,100. Judgment was entered for this amount, and, a motion for a new trial having been overruled, the cause is brought here by appeal.

At the instance of plaintiff the court gave the following instructions:

1. "The jury are instructed that any representations, in relation to said note of $12,000, made by defendant to any agent of plaintiff, prior to the time the same was indorsed and delivered by defendant to plaintiff, if the same were communicated by such agent to plaintiff before said indorsement to said plaintiff, are representations made by defendant to plaintiff."

2. "If the jury believe from the evidence that, about February 20, 1871, the said defendant proposed to purchase from plaintiff the Smithers building, and lot on which same was situated, at the sum of $90,000, by assuming certain incumbrances thereon, and paying the remainder, amounting to $55,000, partly in cash and partly in notes, which were secured by deeds of trust upon property, and which deeds of trust were the first incumbrances upon the property described in the respective deeds; that among the said notes so secured by deeds of trust was a note executed by Stanford Graves, dated May 20, 1870, for $12,000, payable to the order of defendant, five years after date, together with interest notes for the maturing semi-annual interest that would become due thereon, at 10 per cent. per annum, which was secured by a deed of trust, made by Stanford Graves, upon a tract of land in Jefferson county; that, in order to induce the said plaintiff to accept and take such note of $12,000 as so much cash, in part payment of said lot, said defendant represented to said plaintiff, positively as a fact, that the said deed of trust securing the same was a first lien upon said tract of land in said Jefferson county, and said note was as good as, and equivalent to, cash; that

said plaintiff, relying upon said representations of said defendant being true, took and received the said principal note of $12,000, so made by said Graves (together with the interest notes for the unpaid interest), indorsed without recourse by defendant, for the amount of said principal, as so much cash, in part payment for said building, and without such representations by defendant, said plaintiff would not have taken said notes, and conveyed said lot and building to defendant; that, at the time of said representations, and of said conveyance, the said tract of land described in the deed of trust securing the said note of $12,000, was then, has continued to be, and is now, incumbered by a prior deed of trust, for an amount not greatly larger than its value; that the said Stanford Graves, prior to and at the commencement of this suit, was insolvent; that said note remains wholly unpaid; that said plaintiff, as soon as he discovered that there were prior incumbrances upon said land, and prior to the commencement of suit, tendered to said defendant the said notes, principal, and interest, and demanded the said sum of $12,000—then the plaintiff is entitled to recover from said defendant a sum equal to the said sum of $12,000, with interest thereon from the said November 20, 1871, at the rate of 10 per cent.; and it makes no difference whether the jury believe that, at the time of making the said representation to plaintiff, the said defendant believed them to be true or not, if they were false in fact, nor that said defendant, when he delivered the said notes to plaintiff, indorsed the same without recourse."

The following instruction was given at the instance of defendant:

"If the jury believe from the evidence that, before the deed of trust made by Graves was transferred to the plaintiff, the defendant delivered it to the plaintiff, or his agent, Obear, with the abstract of title and the certificate of examination, read in evidence, as to incumbrances upon the premises described in said deed of trust, and only

declared it as his opinion or belief, based upon such abstract and certificate, that said deed of trust was a first lien upon said premises, and did or said nothing intentionally to mislead or prevent said plaintiff, or his agent, from examination as to incumbrances upon said land to be made, then the court instructs the jury that the fact that said deed of trust was not a first lien or incumbrance upon the premises described in it does not of itself give the plaintiff a right to recover in this action.''

Declarations of law, substantially as follows, were asked by defendant, and refused :

1. '' That fraud cannot be presumed in this case ; it must be proved.

2. '' To recover, plaintiff must show misrepresentation by defendant of a material fact ; that defendant knew the falsity of his statement ; that plaintiff relied upon this representation, and could not, by the exercise of ordinary care, have ascertained its falsehood.

3. ''That, if plaintiff did not use ordinary diligence to ascertain the facts about the Graves title, and was not prevented from exercising such diligence and caution by any artifice of defendant, he cannot recover.

4. '' That, if both parties were in an equally good position to ascertain the facts, and defendant was guilty of no intentional misrepresentation, plaintiff cannot recover.

5. '' That plaintiff is not entitled to recover on the evidence.''

This is not an action for damages arising from any misconduct of the defendant. It is not pretended that he fraudulently stated what he knew to be false, or what he did not have good reason to believe to be true. It is conceded, and is quite clear from the evidence, that he was convinced of the truth of his statement at the time it was made, and had taken pains to ascertain the fact. Before he made the loan to Graves, he took the ordinary precautions. He visited the property, caused an abstract of the title to be

furnished to his lawyer by the recorder of deeds of the county where the land lay, and was advised that the title was perfect. The mistake was in the abstract furnished by the recorder, and shows either that the index was imperfect, or that it was carelessly examined. No caution on the part of the purchaser of real estate can furnish an absolute protection against the consequence of errors in the recorder's office, or oversight on the part of the man who examines the index. Bircher said the note was well secured. He believed it; and it is in evidence that, but for the existence of the prior deed of trust, the notes of Graves were sufficiently secured after making allowance for the misdescription of property in the deed.

Neither is this a proceeding in equity to rescind a contract on the ground of innocent mistake.

This action proceeds upon the theory that, if a misstatement be made by one party to a bargain, of any material matter, which statement induces loss to the other party, all actual damage caused by such misstatement must be made good.

The tendency of all modern cases is to enlarge the responsibility of the seller, and, frequently, to imply a warranty from acts and circumstances whenever relied upon by the buyer. The old doctrine of *caveat emptor*, which ruled supreme two centuries ago, has been losing ground constantly from the days of Lord Holt, and in our time has almost given away to the *caveat venditor* of the civilians. From the case of *Chandelor* v. *Lopus*, Cro. Jac. 4, where the defendant affirmed a stone to be bezoar stone, and, as there was no *scienter* in the declaration, it was held that there was no cause of action, because no fraud alleged, to the case of *Henshaw* v. *Robbins*, 8 Metc. (1845), in which an article was sold as Manila indigo to a druggist, who carefully examined it and accepted it as such, and afterwards held the vendor liable because the article sold was prussian blue, chromate of iron, and potash, so skillfully

compounded as to deceive experts, there has been a great change. It is now the generally received doctrine that any affirmation made by the vendor at the time of sale, in relation to the goods sold, is a warranty, if so meant by the seller and understood by the buyer—that is, if it be the affirmative statement of a material fact, and not the mere expression of opinion.

What did the vendor here sell? A promissory note, a first lien on real estate. But the note sold was not a first lien on real estate; and that it should be a first lien was the most material thing in the bargain. It is as the case where one sold a copper-fastened ship, taken with all her faults, without allowance for any defects whatever, and she was proved to be only partially copper fastened. This was taken to be a breach of warranty that she was at least copper fastened. *Shepherd* v. *Kain*, 5 B. & Ald. 240. Her faults must be consistent with her being copper fastened throughout. No reliance was placed here upon the maker of the note; it was not claimed that he was solvent, punctual, or honorable. The vendor placed so little reliance upon his meeting the note when due that he insisted upon indorsing the note " without recourse," evidently anticipating that the land alone must be looked to to pay the debt.

The words " without recourse," annexed to defendant's indorsement, only exempt him from that liability on the note, in case of its dishonor at maturity, to which he would otherwise be subject by the law-merchant. They do not exempt him from the obligation he is under, in case the instrument turns out not to be genuine, to return the money paid for it by one to whom it is sold; nor in case of a real-estate note, where all other circumstances point to a warranty that it is a first lien, does this form of indorsement give a different color to the transaction. *Frazer* v. *D'Invilliers*, 2 Barr (Penn.), 200. It only shows that the indorsee was by no means assured that the paper would be taken up at maturity by the maker.

The law of this case seems to have been correctly given to the jury. If the jury found all the facts set out in the instructions asked by plaintiff, there could be no question that a representation was made as to a material fact, which was understood at the time and accepted as a warranty; and this seems to be sufficient to hold the vendor, although in good faith and innocently mistaken.

That this was not a case of guaranty is clear enough. It cannot be said that one transferring a note "without recourse" intends to guarantee that the maker will pay it when due, or that he could have been so understood by the person taking the note; but it by no means follows that he did not, therefore, warrant that the note was genuine, or that it was secured in a particular way, or that, as in the case at bar, it was a first lien. Neither was it necessary that plaintiff should in terms charge in his petition that defendant warranted the truth of his statements, or that his liability was that of a warrantor. The petition alleges a representation and a positive and unequivocal affirmation of certain facts on the faith of which plaintiff received certain notes. No particular phraseology need be either set out or proved. *Carter* v. *Black*, 46 Mo. 384. If one who makes a representation to effect a sale, stating the same absolutely as a fact, which representation is material, and is relied upon and acted on by the other party as true, must, if the same be untrue, make good to the other party what he has lost by reason of that misrepresentation, although the party uttering it believed it at the time to be true, then there is no substantial error in this case, and the judgment is for the right party and must be affirmed. *Baker* v. *Scudder*, 56 Mo. 272, and *Carter* v. *Black*, 46 Mo., seem fully to warrant the conclusion that the facts of this case were enough to fix the liability of defendant.

This case does not present an action *ex delicto*, founded on false and fraudulent representations, and it is not essential to a recovery that it should. The form of pleading on

a warranty was changed from *tort* to *assumpsit* in the days of Lord Mansfield, and the form of declaring in *assumpsit* discussed and regularly established as the proper form in cases of express warranty. In *Stuart* v. *Wilkins*, 1 Doug. 19, Lord Mansfield declares that he found this sort of declaration, where warranty was to be proved, had been practiced already for more than twenty years, to let in both proofs if necessary; and, as the distinction between cases of express and implied warranty was soon reduced to merely the kind of proof necessary to establish the one or the other, the distinction between the two kinds of warranty became wholly formal.

The honesty of intention with which the false declaration is made is no more material, in the present condition of the law on this subject, in an action on the warranty, than in a proceeding in chancery to avoid the contract. The contrary position is taken by learned counsel for appellant, and is very ably defended by them; but, in view of the current of modern decisions, the position is essentially untenable, and, if ever held in Missouri, has ceased to be the law.

In case of a warranty of quality of an article it frequently becomes a question for a jury whether certain representations amount to a warranty, and were so understood by the parties, or were a mere commendation by the party of his wares. But it could hardly be necessary, in the case at bar, to ask the jury to say, in so many words, whether the statement that the notes in question were first liens on real estate was the affirmance of a material fact or a mere expression of opinion. Whether a note is equivalent to cash may perhaps be a matter of opinion; but whether it is a first lien upon certain described real estate is not at all a matter of opinion, but a matter of fact, and, if such a statement was made and accepted under the circumstances set forth in plaintiff's instructions, such a statement was a warranty as a matter of law, and it was not necessary explicitly to sub-

33

mit to the jury the question of the intention with which it was made.

The first instruction asked by defendant was properly refused, because there was no question of fraud in the case.

The second and third instructions were based upon the idea that the representations must be known to be false when made, to create a liability, and were properly refused as utterly inconsistent with those given.

The fourth instruction is not supported by the evidence; but if Smithers had been in as good a position as defendant he might still have safely relied upon the representations of defendant as to priority of lien.

The fifth instruction asked by defendant was perhaps based upon the fact that the principal Graves note was not due when this verdict was rendered, and that the note itself was pledged by Smithers. But, as this suit is not on the note, but upon the representations made by defendant in relation to it, the fact that the note was not due when judgment was entered is no bar to recovery. Nor is there anything in the objection that plaintiff had pledged the note to secure fulfillment of the agreement as to payment of the premiums in gold. This objection would not be tenable even in a suit on the note, for the general property in the note remained in Smithers after the pledge. He might have transferred the note, subject to the lien, and he could sue on it in his own name.

No error appearing in this record for which the judgment of the Circuit Court should be reversed, it is affirmed, with the concurrence of all the judges.