HILL-DODGE BANKING CO., Respondent, v. A. C. LOOMIS et al., Appellants.

St. Louis Court of Appeals, May 25, 1909.

1. EVIDENCE: Presumptions: Burden of Proof: Sanity. Prior to an inquest, sanity is presumed, and the burden of proving insanity rests upon him who relies on that state of mind.

2. PLEADING: Answer: General Denial: Special Defenses. Under section 604, Revised Statutes 1899, defendant may prove any fact which tends to show plaintiff never had a cause of action against him; but where the defense relied on is not included in the allegations necessary to support plaintiff's case, it must be specially pleaded.

3. UNSOUND MIND: Negotiable Instruments: Promissory Notes: Validity. Where a person of unsound mind executes a promissory note, and the person with whom he deals is ignorant of his mental infirmity, such note is not void ab initio, but only voidable.

4. PLEADING: Answer: General Denial: Negotiable Instrument. In a suit on a promissory note against the administrator of a deceased person, who was one of the makers, the defense that the mind of such deceased person was so weak as to render him incapable of transacting business or comprehending the nature of a business transaction is not available under a general denial.

5. WITNESSES: Competency: Co-Contractor Dead: Administrator Party: Statute. Where two persons execute a promissory note as joint makers, and suit is brought thereon against one of them and the administrator of the other, who was deceased, the surviving maker is not an incompetent witness, under section 4652, Revised Statutes 1899, to testify in favor of the obligee, concerning the note.

6. EVIDENCE: Evidence Erroneously Admitted Not Error if Merely Cumulative. Where a witness, supposedly incompetent, gives no evidence that is not proved abundantly by other witnesses, its admission, even if improper, would do no harm.

Appeal from Clark Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*O. S. Callihan* and *T. L. Montgomery* for appellant.

(1) The evidence of partnership adduced at the trial tended to prove a non-trading partnership, even if competent, without being alleged in the petition, one member of the firm has no implied authority to bind the firm by issuing negotiable paper and the burden of proof is upon the one seeking to hold the firm liable and plaintiff has failed to so show.    22 Am. and Eng. Ency. Law (2 Ed.), p. 153; Stavnow v. Kennefick, 79 Mo. App. 41; Randall v. Lee and Randall, 68 Mo. App. 561; Deardorf's Admr. v. Thatcher, 78 Mo. 128; Bank v. Snyder, 10 Mo. App. 211.    (2) The widow of Harvey Loomis was not a competent witness and her testimony should have been excluded. R. S. 1889, sec. 4656; Holman v. Bachus, 73 Mo. 49; Moore v. Wingate, 53 Mo. 398; Willis v. Gammill, 67 Mo. 730; McFadin v. Catron, 120 Mo. 252; Johnson v. Banks, 103 Mo. App. 221.    (3) Even though a partnership existed between the parties of a non-trading firm such as this, the surviving partner is not a competent witness to prove the execution of the note sued on.    McClelland v. McClelland, 42 Mo. App. 32; Rice v. McFarland, 41 Mo. App. 489; Filley v. McHenry, 71 Mo. 417; Bank v. Outhwaite, 50 Mo. App. 124; White v. Muddlemarch, 42 Mo. App. 363; Diel v. Railroad, 37 Mo. App. 454; 22 Am. and Eng. Ency. Law (2 Ed.), pp. 153-4; Deardorf v. Thacker, 78 Mo. 131. (4) A judgment by default having been taken against him A. C. Loomis is not a competent witness to prove the execution of the note by reason of his interest in the controversy.    His testimony should have been excluded and the defendants' demurrer to the evidence should have been given.    R. S. 1899, sec. 4652; Rice v. McFarland,

41 Mo. App. 489; R. S. 1889, sec. 8118; Meyer v. Thurman, 90 Mo. 433; Chapman v. Daugherty, 87 Mo. 617; O'Bryan v. Allen, 108 Mo. 227; Biebers Admr. v. Baelkman, 70 Mo. App. 506; Bagnall v. Bank, 76 Mo. App. 121; Cleveland v. Colsun, 99 Mo. App. 471; Supreme Council v. Betis, 106 Mo. App. 434. Lightners Admr. v. Gregg, 61 Mo. App. 650; Ladd et al. v. Williams, 104 Mo. App. 390; Stranton v. Ryan, 41 Mo. 510; Clark v. Thias, 173 Mo. 628; Dixon v. Hood, 7 Mo. s. p. 414; Dawson v. Wambles, 104 Mo. App. 272; Am. and Eng. Ency. Law (1 Ed.), vol. 29, p. 703, vol. 30, p. 1049; Alcom v. Cook, 101 Pa. St. 209; Kuoh v. Hines, 48 Neb. 691; Patton v. Fox, 169 Mo. 97; Davis v. Wood, 161 Mo. 17.   (5) As against the administrator the note must be proven as if a *non est factum* had been set up, the answer being a general denial, the defendant should have been permitted to establish the mental incapacity of Harvey Loomis at the date of the note and the court should not have excluded the same. It was competent evidence under the general issue and does not have to be plead. R. S. 1899, sec. 747; Cavender v. Waddingham, 2 Mo. App. 551; White v. Middlesworth, 42 Mo. App. 368; Corley v. Weddle, 57 Mo. 452; Hoffman v. Parry, 23 Mo. App. 20; Allan v. Richard, 83 Mo. 56; Patterson's Mo. Code Pleading, sec. 552. (6) When, as in this case, there is any substantial evidence, though slight, whether direct or inferential, tending to establish the matters in issue, nor any evidence from which the ultimate facts may rationally be inferred, it is incumbent on the court to submit such issue to the jury, leaving the jury to determine the credibility of the witnesses and the weight and sufficiency of the proof submitted. Knapp v. Hanlen, 108 Mo. App. 353; Brown v. Kimmiel, 67 Mo. 430; Smith v. Hutcheson, 83 Mo. 683; Moody v. Dentsch, 85 Mo. 237; Charles v. Patch, 87 Mo. 450; Novinger v. Vogt, 88 Mo. 589; Berry v. Railroad, 124 Mo. 223.   (7)   The verdict   is against   the evidence and   the   weight   of   the   evidence.   The   court

should have given the instruction prayed for by defendant in nature of a demurrer to all the evidence in the cause. The court wrongfully directed a verdict for plaintiff. Hunt v. Railroad, 89 Mo. 607; Deering v. Saum, 56 Mo. 479; Commissioners v. Clark, 94 U. S. 284; Rowell v. Railroad, 76 Mo. 84; Lonberger v. Pohlman, 16 Mo. App. 39; Avery v. Fitzgerald, 94 Mo. 207.

*E. R. Bartlett* and *C. T. Lewelyn,* for respondent, filed argument.

GOODE, J.—This is an action on a promissory note of the following tenor:

"MEMPHIS, Mo., July 8th, 1903.

"Six months after date, for value received, we promise to pay to the order of the Hill-Dodge Banking Company, (a corporation), at their banking house in Warsaw, Illinois, the sum of Seven Hundred and Fifty Dollars. With interest at the rate of 7 per cent per annum from date until paid, and if the interest is not paid annually, to become as principal and bear the same rate of interest; and agree to pay all costs and attorney's fees should this note be collected by an attorney, by suit or otherwise, after default in the conditions thereof. If the interest is not paid annually, both principal and interest may be considered as due and collectible at the option of the holder.

P. O. Revere, Mo.              A. C. LOOMIS,

No.                            HARVEY LOOMIS.

Due

Endorsements: "$27.25 Paid ac. interest 2-27-04."

The petition alleges Harvey Loomis died intestate in Clark county in the year 1904, and defendant Charles Hiller was appointed and qualified as administrator of said Harvey's estate; alleges A. C. Loomis and Harvey Loomis executed and delivered the foregoing note to plaintiff, paid thereon February 8, 1904, the sum of $27.25, which was duly credited, made no further pay-

ment and the balance is still due. The second count is substantially like the first, except the inclusion of a prayer for a reasonable attorney's fee, which is put at fifty dollars. After the conclusion of said two counts the note is recited, also the affidavit of the president of plaintiff banking company, that to the best of his knowledge and belief the company had accounted to the estate of Harvey Loomis for all credits and offsets to which the estate was entitled, and the balance claimed was justly due; also a recital of waiver of notice by Hiller as administrator on January 17, 1905, of the presentation of the demand against the estate of Harvey Loomis, which also stated the administrator was satisfied the demand was correct. A. C. Loomis made default, and judgment was taken against him. Hiller filed an answer denying generally each and every allegation of the petition and all knowledge and information thereof sufficient to form a belief, calling for full proof and praying to be dismissed with costs.

Harvey Loomis, deceased, was the father of A. C. Loomis, and the evidence goes to show the two were equal partners in farming and raising stock and each signed notes and other instruments when occasions arose. Mrs. Anna Loomis McLemore, a resident of Concho county, Texas, where the Loomis family now reside, testified she was a daughter of Harvey and a sister of A. C. Loomis, and that the two "were equal partners in farming and stock, except the horses;" that A. C. Loomis had been for years authorized to sign papers of all kinds for Harvey Loomis. Mrs. Frances Loomis, mother of A. C. and widow of Harvey, was permitted to testify for plaintiff over the objection of the administrator that she was not a competent witness because the widow of the deceased, and the law did not permit her to testify to any conversations of her husband whether made to her or to third parties. She said her husband authorized A. C. Loomis to sign her husband's name to any business matter that came up; that the two

were equal partners in farming and all stock business, except horses. The partnership was proved by various other witnesses. E. R. Bartlett testified the note in suit was given in renewal of two former notes made by the firm; that he sent the unsigned paper to A. C. Loomis and it came back with the signatures of Harvey Loomis made by a mark and witnessed by Carrie Loomis, his granddaughter. As Harvey Loomis had signed his own name to former notes, Bartlett refused to accept the note in suit in the form it was first received, and returned it, asking Harvey Loomis to sign his name, and afterwards it was sent to him in its present form. Bartlett said he saw both the Loomises sign the $500 note for which this one was given in renewal, but did not see this note signed because he received it through the mail. He testified to hearing both A. C. and Harvey Loomis say they were partners; that they applied to him for a loan and gave a statement of their financial condition; that Harvey Loomis told him A. C. Loomis attended to the business of the firm. Hiller, as administrator, testified he knew from their statements the two Loomises were in partnership; that A. C. Loomis usually attended to all business for Harvey Loomis, as the latter was in poor health; that the firm notes were signed with the individual names of both parties and either party signed for both. David N. Lapsley testified Harvey Loomis told him A. C. Loomis attended to the business of the firm. A. C. Loomis testified he and his father were partners and the partnership continued until the death of the latter, September 11, 1904; that his father signed the note in suit, he (A. C. Loomis) holding his father's hand to steady it while the signature was written. This testimony was objected to on the ground the witness was interested in the result of the action, was a party to the contract in suit and was not competent as a witness against the administrator. He testified further the note was a renewal of two other notes, which had been given for money used in the firm's business. It was agreed a

reasonable attorney's fee would be fifty dollars. Some circumstantial evidence tending to establish the partnership was received. The defense offered evidence tending to prove the mind of Harvey Loomis, at the date of the execution of the note, was so weakened by disease he was unable to transact business or comprehend the nature of a business transaction. All this evidence was excluded by the court and exceptions were saved by defendant; but evidence was admitted to show Harvey Loomis was in poor health before he died. The same theory of defense was rejected in passing on the instructions, on the theory that it had not been pleaded. The court directed a verdict for plaintiff and the jury having found one, the judgment went accordingly and defendant appealed.

1. Color of authority may be found for the proposition that lunacy, or mental weakness of such intensity as to deprive the patient of ability to understand a business transaction, may be given in evidence under a general denial in an action on a contract. The point was decided by this Court in Cavender v. Waddingham, 2 Mo. App. 511, an action where the defense to the contract declared on was mental incapacity from drunkenness. Though that decision was pronounced by a strong court and the opinion was written by an erudite judge, we think its doctrine is inconsistent with a fundamental rule of the law of pleading, and was pronounced in consequence of the notion that a contract entered into by a person when *non compos mentis* is necessarily void. The opinion said our practice act requires many defenses which formerly might have been proved under the general issue to be alleged specially, but denied mental incapacity to make a contract was one of them. That said rule of pleading was declared because the court was under the impression that the contract of a person metally incompetent was void *ab initio* and the rule of pleading flowed logically from the nullity of the contract, is shown by the quotation in support of the

rule of a remark of the Supreme Court in Corby v. Weddle, 57 Mo. 452. The passage quoted is as follows: "When a deed is void *ab initio* and not merely voidable, the plea of *non est factum* is proper; and the facts showing the instrument to be void may be given in evidence to sustain such plea."

What the Supreme Court said was relevant to the facts before it, the case under advisement being one on a promissory note to which the defendant testified his signature had been procured by a fraudulent misrepresentation of the contents. An instrument executed under those circumstances is void from the first, if the signer is not careless, and there is a show of reason for saying proof of the fact may be introduced under a general denial or plea of *non est factum*. If it ever was the doctrine at common law that mental incompetency to contract might be proved under the latter plea in an action on a writing obligatory, it was on the theory that the infirmity of the promisor rendered any agreement he might make void from the first. Only those defenses were admissible under said plea which disproved the execution of the instrument in point of fact, "or that its execution was absolutely void in law; as, for example, on the ground that the alleged obligor or covenantor was a married woman or a lunatic." [Stephens, Pleadings (Andrews Ed. 1894), sec. 113 and citations.] The same treatise says in the same connection, "but if the defendant's case consists of anything but a denial of the execution of the deed, or some fact impeaching the validity of its execution, the plea will be improper." At the foot of that text is this note: "Matters which make the deed *voidable* and not absolutely *void*—such as *duress*—must be specially pleaded and cannot be given in evidence under *non est factum*." [Com. Dig. Pleader (2 W. 19), 2 Inst. 488]. In Collins v. Trotter, 81 Mo. 275, an action on a promissory note, two of the defendants who were deaf mutes, answered by guardian they were of unsound mind and incapable of performing a legal act

at the date of the note. The court said the answer was tantamount to the plea of *non est factum,* for though it admitted the act of signing, it denied the consenting mind essential to a contract. The main point decided there was, the guardian could not admit anything against his wards so as to dispense with proof of the facts requisite for a case. The court was not really considering whether evidence of mental incapacity could be put in under the general issue of *non est factum;* and if it had been, the case would be no authority for this appellant, because the court said those defendants, being deaf mutes, were *prima facie* incompetent to make a contract and the burden of showing their competency was on the plaintiff; thus putting them in the posture of a lunatic after office found, when his contracts, unless for necessaries, are not voidable merely, but void. [Wells v. Benefit Assn., 126 Mo. 630, 637; Rhoades v. Fuller, 139 Mo. 179, 187.] But prior to an inquest, sanity is presumed, and the burden of proving insanity rests upon him who relies on that state of mind. [Chadwell v. Reid, 198 Mo. 359.] In Mitchell v. Kingman, 5 Pick. 431, it was remarked an insane person, under plea of *non est factum,* might prove his lunacy in defense of an action on a promissory note or other contract. Perusal of the opinion will show the question for consideration was, whether the old common law doctrine still obtained that a lunatic could not stultify himself by pleading his incapacity in any mode, either specially or by the general issue. In so far as the right is supported to prove lunacy in defense under *non est factum,* the case assumed lunacy, *ipso facto,* avoided the contract; and this we apprehend is the only ground on which such a rule can be enforced without doing violence to the fundamental rule that *non est factum* only lets in evidence in disproof of the execution of the instrument or in proof of its illegality, if executed. Indeed, we find in the treatise of highest authority on the rule of common law pleading, no support for the doctrine that the

defense of mental incompetency or any cognate one, can be proved under the plea of *non est factum* or the general issue, in an action of assumpsit or one on a specialty or covenant. Said treatise says these defenses are in the nature of confessions and avoidances and must be specially pleaded. [1 Chitty, Plead. (16 Am. Ed.), *504, 511 incl.] The same work says the lunacy of a defendant, and a plaintiff's notice of it when the contract declared on was made, should be specially pleaded as being matter showing the transaction either void or voidable in point of law on the ground of fraud *or otherwise."* And a form in which to plead the lunacy of the defendant when he entered into the contract, is given. [2 Id. 436.] Writers uniformly say this is the rule in England, though they are silent about what it is in this country. [1 Daniel, Neg. Inst. (5th Ed.), sec. 209; Byles, Bills, 64; 1 Edwards, Bills and Notes, sec. 26; 1 Randolph, Neg. Inst., sec. 251.] As said, *supra,* Cavender v. Waddingham, concedes a general denial under the code is not equivalent to the general issue at common law. The statute says the answer of the defendant shall contain, first, a general or specific denial of each material allegation of the petition, etc., and second, a statement of any new matter constituting a defense. [R. S. 1899, sec. 604.] The appellate tribunals of this State have held in numerous cases, that under a general denial a defendant may prove any fact which tends to show the plaintiff never had a cause of action against him; such as non-execution of the contract in suit, or its illegality. [Greenway v. James, 34 Mo. 326; Sprague v. Rooney, 104 Mo. 349.] But the courts have also held that when the defense relied on is not included in the allegations necessary to support the plaintiff's case, it must be specially pleaded. [Northrup v. Insurance Co., 47 Mo. 435.] In Greenway v. James the court said where a cause of action which *once existed* had been determined by some subsequent event, the new matter must be specially pleaded; but where the cause

of action *never existed,* the appropriate defense was denial of the allegations of the petition, and any facts tending to disprove them were pertinent. Accordingly it was decided in Corby v. Weddle fraud in procuring the execution of the written instrument might be shown under *non est factum,* as the fact, if proved, avoided the instrument at its inception, thereby preventing a cause of action on it from coming into existence. In White v. Middlesworth, 42 Mo. App. 368, the admissibility, under the general issue, of evidence to prove an agreement was void *ab initio* because procured by fraud was conceded, Cavender v. Waddingham and many other cases being cited for the rule. But the court said further, if the contract was only voidable, not void, it was necessary to plead specially the circumstances of the fraud, and that the rule of pleading in such cases is essentially different from where the contract is a mere nullity—void *ab initio;* citing, Anthony v. Wilson et al., 14 Pick. 303, in support of the distinction. The cited case was trespass, the defense was a license to enter, and the plaintiff was permitted to prove under a general reply he had been induced to grant the license by the defendant's falsely representing he held a search warrant. The question on appeal was the competency of this evidence of fraud, which the court said depended on whether the evidence would render the license voidable or absolutely void; that if it were voidable only, the case for avoiding it should have been set forth specifically in the replication—*contra,* if it was void *ab initio;* for the defendant might then deny he had ever given any license at all; as he might deny a deed signed by him, if his signature had been obtained by misreading the deed or substituting one instrument for another. From those authorities it is clear the reason for the ruling in Corby v. Weddle is inapplicable to the defense attempted in the case at bar; for the excluded evidence did not go to prove fraud in procuring the note or that it was void as to Harvey Loomis because of his mental incapacity.

Whatever the law may be elsewhere, it has been determined repeatedly by the Supreme Court that the contract of a person too weak mentally to be capable of transacting business, if entered into before he had been put under guardianship and without the party with whom he deals knowing of the mental infirmity, is not void from the first, but only voidable; and that, too, upon equitable terms. We transcribe from one of the opinions a passage which states the law in the form approved in the later cases:

"We are of the opinion that the court erred in the conclusions of law pronounced upon the facts as found. There can be no doubt that a deed, or other contract of an insane person, will generally be held invalid, yet, as is said by Mr. Pomeroy, 'While this rule is generally true, the mere fact that a party to an agreement was a lunatic will not operate as a defense to its enforcement, or as a ground for its concellation.' 'Where a conveyance or contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties cannot be restored to their original position and injustice would be done.' [2 Pomeroy on Equity Jurisprudence, sec. 946, and authorities cited; Gribben v. Maxwell, 34 Kan. 10; Ins. Co. v. Hunt, 79 N. Y. 544; Wirebach v. Bank, 79 Pa. St. 549; 11 American & English Encyclopedia of Law, 136.]"

See to the same effect Cutler v. Zollinger, 117 Mo. 92, 101; Wells v. Ben. Assn.; Rhoades v. Fuller, supra; McAnaw v. Tiffin, 143 Mo. 667, 679; Jamison v. Culligan, 151 Mo. 410, 416. The law is clear that the note in suit was not void from the first as against Harvey Loomis, even if the latter was laboring under such mental infirmity as disqualified him to contract, but was, at most, only voidable upon proper terms; and we hold this defense was not available to the administrator under a general denial. And as far as Cavender v. Wadding-

ham, supra, is in conflict with this view, it will be disapproved.

2.    Error is assigned on account of the reception of the testimony of A. C. Loomis, who is a party both to the note and to the action. According to the decision in Citizens Ins. Co. v. Broyle, 78 Mo. App. 364, and Vandergrif v. Swinney, 158 Mo. 527, 533, he was a competent witness notwithstanding these facts. Those decisions are squarely in point, but there have been so many contrary judgments pronounced on the statute in question we hesitate about applying it in any case, for fear of getting into conflict with a prior adjudication. At common law any interest would disqualify a party and the main purpose of the statute, as shown in its first clause, is to remove the disability of parties interested in the event of litigation, except in certain circumstances mentioned in the provisos, and the question is not whether the witness was interested in the result, but whether he came within one of the provisos—whether he sustained such a relation to the contract or the litigation, that the statute did not remove the disability imposed by the common law because of his interest. [R. S. 1899, sec. 4652; Banking House v. Root, 132 Mo. 256; Savings Bank v. Slattery's Admr., 166 Mo. 620.] The first proviso says where one party to a contract, or cause of action in issue and on trial, is dead or insane, the other party to such contract or cause of action shall not be permitted to testify in his own favor, or in favor of any party to the action claiming under him. The words, "the other party to said contract or cause of action shall not be permitted," etc., signify the party with whom the deceased made a contract and not a person who joined with the deceased as a co-contractor. It is argued A. C. Loomis is within the intention of the statute because it was to his interest for his father's estate to be held liable on the note, as thereby he would escape liability *pro tanto*. But the words of the clause do not suggest a purpose to disable living obligors to

testify in an action on a contract, in favor of the obligee, merely because one of their co-obligors is dead, and the testimony of the survivors may benefit them by laying his estate liable. We think such an incidental benefit is not meant to be prohibited by the words "shall not be permitted to testify in his own favor." We also think the words "or in favor of any party to the action claiming under him," do not shut out testimony of A. C. Loomis in favor of plaintiff, because plaintiff does not claim under A. C. Loomis but against him. The language of the first exception is barren of any words to countenance the meaning contended for by appellant, which is opposed to the spirit and aim of the enactment. The second exception disqualifies any party to a suit or proceeding whose right of action or defense is derived from a person who, if living, would be disqualified under the first proviso. It is plain the second clause has no relevancy to the competency of A. C. Loomis, who does not derive his interest or defense from his father. The third clause says when an executor or administrator is a party, the other party shall not be permitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator. That proviso was meant to prevent a person who sues, or is sued by, an executor or administrator, from testifying regarding the contract or cause of action in suit, thereby putting the administrator at a disadvantage, because the latter would be ignorant of the facts of the transaction between his adversary and the decedent. This is shown to be the intention of the proviso, by the permission accorded to the adversary of the executor or administrator to testify when the contract in issue was made with a person who is living and competent to testify and whom the administrator may summon as a witness. Said exception is intended to prevent testimony being given by

a person who occupies the position in the litigation of an adversary party to the executor or administrator, instead of preventing any one from testifying who happens to be interested in .having the action terminate adversely to the administrator.

3. As to the supposed incompetency of the widow of the deceased to testify, we will not inquire, because she gave no evidence which was not proved abundantly by other witnesses and its admission, even if improper, which we do not concede, did no harm.

The judgment ·is affirmed. All concur.